IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00321-CV

 

In
the Interest of J.C.B., a Child

 

 

 



From the 74th District
Court

McLennan County, Texas

Trial Court No. 2008-1454-3

 



abatement ORDER



 

In an order signed on August 27, 2010,
the trial court terminated the parental rights of Appellant to his son J.C.B. 
Appellant’s motion for new trial and statement of points for appeal were filed
on September 8, 2010.  Appellant’s “affidavit of financial condition” was filed
September 21, 2010, and on that same day the trial court found Appellant to be
indigent and appointed counsel for appeal.

In an order signed on September 27,
2010, the trial court denied Appellant’s motion for new trial.

Family Code subsection 263.405(d), which
applies to this case, provides:

(d) The trial court shall hold a hearing
not later than the 30th day after the date the final order is signed to
determine whether:

 

(1) a new trial should be granted;

(2) a party’s claim of indigence, if
any, should be sustained; and

(3) the appeal is frivolous as provided
by Section 13.003(b), Civil Practice and Remedies Code.

 

            The trial court has
determined that a new trial should not be granted.  It has also determined that
Appellant is indigent; therefore, Appellant’s “affidavit of financial
condition” that was filed in this court on October 26, 2010 is moot.

            The trial court did not make
the statutorily required determination of whether the appeal is frivolous. 
Accordingly, this appeal is abated and the case is remanded to the trial court
for a frivolousness determination.

The trial court shall conduct the
frivolousness hearing within fourteen (14) days after the date of this order. 
The trial court clerk and court reporter shall file supplemental records within
twenty-eight (28) days after the date of this order.

 

PER
CURIAM

 

Before Chief
Justice Gray

and
Justice Davis

Appeal abated

Order issued
and filed December 15, 2010

Do not publish








 






Esparza, were driving home together from a club when
Stewart’s truck overturned as he was passing another car. The truck rolled over several times,
ejecting Esparza. Esparza died shortly thereafter. The State charged Stewart with manslaughter
and FSRA.Legal and Factual Sufficiency
      Stewart argues in the first point of his FSRA appeal that the evidence is factually insufficient
to support a conviction for failure to stop and render aid. He also contends in the first point of
his homicide appeal that the evidence is legally and factually insufficient to support a conviction
for criminally negligent homicide.
      We review the evidence in a legal sufficiency challenge in the light most favorable to the
verdict and ask whether any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. See Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App.
2000) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979)). The factfinder is entitled to evaluate the credibility of witnesses and is entitled to believe
all, some or none of the evidence presented. See Chambers v. State, 805 S.W.2d 459, 461 (Tex.
Crim. App. 1991). A jury verdict must stand unless it is found to be irrational or unsupported by
some evidence. See Moreno v. State, 755 S.W.2d 866, 868 (Tex. Crim. App. 1988) (citing
Jackson, 443 U.S. at 319, 99 S.Ct. at 2789)).
      When we review a factual sufficiency challenge, we view all the evidence in a neutral light
and reverse only if the verdict is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Johnson v. State, 23 S.W.3d 1, 13 (Tex. Crim. App. 2000) (citing
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)); Perkins v. State, 19 S.W.3d 854,
856 (Tex. App.—Waco 2000, pet. ref’d.). This occurs when “the proof of guilt is so obviously
weak as to undermine confidence in the jury’s determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. Johnson, 23 S.W.3d at 11. This
review must defer to the jury verdict so as to avoid an appellate court substituting its judgment for
that of the jury. See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922
S.W.2d at 133.
Failure to Stop and Render Aid
      Stewart claims that the evidence is factually insufficient to prove he knowingly left the scene
of the accident and that it was apparent Esparza required medical attention. The elements of
failure to stop and render aid are: 1) an operator of a motor vehicle; 2) intentionally and
knowingly; 3) involved in an accident; 4) resulting in personal injury or death; 5) fails to stop and
render reasonable assistance. See St. Clair v. State, 26 S.W.3d 89, 98 (Tex. App.—Waco 2000,
pet. ref’d.). The culpable mental state for FSRA is proven by showing that “the accused had
knowledge of the circumstances surrounding his conduct,” meaning that the defendant had
knowledge that an accident occurred. Id. The fifth element may be satisfied by proof that the
operator of a motor vehicle knowingly involved in an accident involving injury or death failed to
remain at the scene until he had given his name, address and vehicle information, shown his
drivers license to anyone involved, or provided any person injured in the accident reasonable
assistance. Id. at 99.
      The indictment in this case alleges that Stewart committed the offense by: 1) leaving the scene
of the accident without giving his name, address and registration number of the vehicle, or the
name of his motor vehicle insurance carrier to anyone; and 2) by leaving the scene without
rendering reasonable assistance to Esparza when it was apparent she was in need of treatment.
      Several witnesses testified that after the truck overturned and came to a complete stop, Stewart
was seen leaving the scene of the accident. The witnesses testified that they called out to Stewart
as he was running away. They testified that he stopped, turned and looked, then continued away
from the scene. The State also introduced testimony that Stewart did not leave any type of
information with witnesses, nor did he render any assistance to Esparza.
      Stewart claims it was not apparent that Esparza needed medical treatment at the scene. 
However, witnesses testified she was thrown from the vehicle and came to rest several yards away
from the vehicle. The witnesses testified that they located her at the scene and it was obvious she
needed medical treatment. Stewart did not present any evidence to the contrary.
      Based on the record in this case, we find the evidence is factually sufficient to support the
conviction for FSRA. Accordingly, we overrule point one in the FSRA appeal.
Criminally Negligent Homicide
      Stewart claims the evidence is legally and factually insufficient to support a conviction for
criminally negligent homicide. He argues the evidence is insufficient to prove, beyond a
reasonable doubt, that his acts caused the automobile accident resulting in the death of Esparza. 
Christy Cooper witnessed the accident in her rear view mirror and testified that immediately prior
to the accident Stewart was driving recklessly, changing lanes in an unsafe manner, and driving
at an unsafe speed. Hailey Mae testified that Stewart passed her in the correct lane, but when he
passed her the truck began flipping. She could not say why the truck began flipping over. Cecil
Whitten was behind Stewart when the accident occurred. He stated that Stewart almost rear-ended
him and swerved around him dangerously. Whitten testified that Stewart ran up behind two cars
very closely, straddling the middle stripe, and as the car in the left-hand lane began to move into
the right-hand lane, Stewart accelerated and swerved into the left lane to pass. Whitten testified
that as Stewart was passing, his car overshot the left lane and drove onto the shoulder. According
to Whitten’s testimony, Stewart then overcorrected to the right and the truck began to turn over. 
The truck crossed the left and right hand lanes and rested on the right-hand shoulder. Officer
David Miranda’s investigation at the scene corroborated Whitten’s testimony.
      Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is
legally sufficient to support the conviction for criminally negligent homicide. Viewing all the
evidence in a neutral light, we conclude the evidence is factually sufficient to support the
conviction for criminally negligent homicide. Accordingly, we overrule point one in the
criminally negligent homicide case.
Indictment
      Stewart’s second point in the homicide appeal alleges that the indictment for manslaughter is
insufficient because it does not state with certainty the acts or circumstances alleged to be reckless. 
He argues the indictment does not provide sufficient notice of the nature of his alleged
recklessness, because it does not state why the acts alleged in the indictment were reckless.
      The indictment alleges that Stewart recklessly caused the death of Esparza by operating a
motor vehicle and:
      1) failing to keep a proper lookout for other vehicles he was approaching;
      2) failing to keep his vehicle under proper control;
      3) failing to timely apply the brakes to his vehicle;
      4) failing to maintain his vehicle in a single lane of traffic;
5) driving his vehicle at too great a rate of speed while approaching other vehicles traveling
in the same direction at a slower rate of speed;
6) failing to maintain an assured clear distance between the vehicle he was driving and the
vehicles ahead of his vehicle; and,
      7) changing lanes in an unsafe manner,
which caused the truck to leave the roadway and overturn, causing Bernadette Esparza to be
ejected. 
      Under article 21.15 of the Code of Criminal Procedure, an indictment must allege with
reasonable certainty the act or acts relied upon to constitute recklessness. See Tex. Code Crim.
Pro. Ann. art. 21.15 (Vernon Supp. 1989). The Court of Criminal Appeals held that an
indictment alleging solely that a defendant “drove a motor vehicle at an excessive speed” is
sufficient for purposes of article 21.15. See Townsley v. State, 538 S.W.2d 411, 412 (Tex. Crim.
App. 1976). Therefore, we find the indictment alleges with reasonable certainty the acts
constituting recklessness. We overrule point two in the homicide appeal.
Concurrent Causation
      Stewart contends in the third point of the homicide appeal that the trial court erroneously
denied his request for a jury instruction on concurrent causation. Section 6.04 of the Texas Penal
Code provides, in pertinent part, that “a person is criminally responsible if the result would not
have occurred, but for his conduct, operating either alone or concurrently with another cause,
unless the concurrent cause was clearly sufficient to cause the result and the conduct of the actor
was clearly insufficient.” See Tex. Pen. Code Ann. § 6.04(a) (Vernon 1994). Stewart requested
that the trial court include a jury instruction stating that a person “does not commit an offense
against the laws of this state if an adult passenger elects not to wear or fails to wear a seatbelt.”
      We find this request is not a proper request for a concurrent causation instruction. Stewart
requested an instruction that simply provides for non-liability if a passenger does not wear their
seatbelt, not a concurrent cause of the injury resulting in death. Therefore, he has not preserved
a complaint on this issue. See Posey v. State, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). Even
if the complaint was preserved, we find Esparza’s conduct in not wearing her seat belt was not
sufficient by itself to cause the injuries resulting in her death. See Tex. Pen. Code Ann. §
6.04(a). We overrule point three in the homicide appeal.
Deadly Weapon Finding
      In the fourth point of the homicide appeal, Stewart claims that the trial court erred in
instructing the jury in the punishment charge that the punishment range was for a third degree
felony when a proper deadly weapon finding had not been made by the jury. 
      The indictment alleges that Stewart used and exhibited a deadly weapon, to wit: a motor
vehicle, in the commission of the offense. However, at sentencing the jury charge did not require
a separate deadly weapon finding. Stewart claims the court improperly allowed an implied deadly
weapon finding when the court instructed the jury on the range of punishment for criminally
negligent homicide.
      Criminally negligent homicide is a state jail felony with a punishment range of confinement
in state jail for not less than 180 days and not more than two years. See Tex. Pen. Code Ann.
§ 12.35(a) (Vernon 1994). However, if it is shown on the trial of a state jail felony that a deadly
weapon was used or exhibited in the commission of the offense, the punishment is enhanced to the
level of a third degree felony. See Tex. Pen. Code Ann. § 12.35(c)(1) (Vernon 1994).
      Stewart argues that an affirmative deadly weapon finding is required to invoke the
enhancement provision of section 12.35(c)(1). Stewart cites Polk v. State for authority that an
affirmative deadly weapon finding is made when: 1) the indictment alleges a deadly weapon was
used and the jury finds the defendant “guilty as charged in the indictment,” 2) the indictment
alleges a deadly weapon by design, and the jury finds the defendant “guilty as charged in the
indictment,” or 3) a special issue is submitted to the trier of fact and answered affirmatively. 693
S.W.2d 391, 394 (Tex. Crim. App. 1985.). None of these methods was employed by the trial
court.
      While Polk is an article 42.12, section 3g case, Stewart’s case involves section 12.35(c)(1)
of the Texas Penal Code. Article 42.12, section 3g, requires “an affirmative finding” on the
deadly weapon issue. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g (Vernon 2001). The
language of section 12.35 requires only that it be “shown on the trial of the offense” that a deadly
weapon was used to enhance punishment from a state jail felony to a third degree felony. See
Tex. Pen. Code Ann. § 12.35(c)(1). The State argues that the language of section 12.35 does
not require an affirmative finding as required under art. 42.12, section 3g, and a deadly weapon
finding may be implied. We disagree.
      The language in section 12.35(c) is analogous to the language in section 12.42 of the Texas
Penal Code. Section 12.42 requires that it be “shown on the trial of the offense” that a defendant
has been previously convicted to enhance the defendant’s punishment. See Tex. Pen. Code Ann.
§ 12.42(a),(c)(1),(d) (Vernon Supp. 2001). We have stated that enhancement allegations under
section 12.42 require a separate jury finding. See Nevarez v. State, 832 S.W.2d 82, 86 (Tex.
App.—Waco 1992, pet. ref’d.). Due to the similarity of the language between sections 12.42 and
12.35(c)(1), we find that section 12.35(c)(1) requires a separate deadly weapon finding at
punishment when the indictment alleges the use of a deadly weapon but the jury convicts on a
lesser-included offense. See Ex Parte Flannery, 736 S.W.2d 652, 653 (Tex. Crim. App. 1987);
see also Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435,
455 (2000) (due process requires that any fact, other than a prior conviction, that increases the
penalty for a crime beyond the prescribed statutory minimum must be submitted to the jury and
proved beyond a reasonable doubt).
      The trial court in this case failed to include a separate deadly weapon instruction in the
punishment charge. We find the trial court committed error by failing to include this instruction. 
However, Stewart did not object to the charge as submitted. Therefore, he must show that the
erroneous punishment charge resulted in such egregious harm that he did not receive a fair and
impartial trial. Kucha v. State, 686 S.W.2d 154, 155 (Tex. Crim. App. 1985) (citing Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). Egregious harm “goes to the very basis
of the case, deprives the accused of valuable right or vitally affects his defensive theory.” 
Almanza, 686 S.W.2d at 172. The trial court’s error increased the minimum sentence from one-hundred eighty days to two years and the maximum sentence from two years to ten years. We find
Stewart suffered “egregious harm” because of this error. Accordingly, we sustain point number
four in the homicide appeal.
Effect of Charging Error
      Stewart claims in the second point in his FSRA appeal that the charging error committed by
the trial court in the homicide case necessarily affected the jury’s assessment of punishment in the
FSRA case.
      The jury in this case was instructed separately for each offense. The court properly instructed
the jury on the range of punishment for FSRA. The jury assessed punishment within this range.
Based on the record, we find that the charge error committed by the trial court in the homicide
case had no effect on the punishment assessed by the jury in the FSRA case. Accordingly, we
overrule point two in the FSRA appeal.
      We affirm the conviction for failure to stop and render aid in all respects.
      We affirm the conviction for criminally negligent homicide. We reverse that portion of the
judgment assessing punishment for criminally negligent homicide and remand this cause (10-00-063-CR) to the trial court for a new punishment hearing.
 
                                                                         REX D. DAVIS
                                                                         Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Judgment Affirmed in Cause No. 10-00-062-CR
Reversed and Remanded in part in Cause No. 10-00-063-CR
Opinion delivered and filed December 12, 2001
Publish
[CR25]